The **PEOPLE** of the State of Colorado,
Plaintiff-Appellee,

v.

James W. **MANNERS**,
Defendant-Appellant.

No. 82CA0344.

Colorado Court of Appeals,
Div. I.

Sept. 19, 1985.

Rehearing Denied Oct. 17, 1985.

Certiorari Denied (Manners)
Feb. 10, 1986.

Lee Jay Belstock, Denver, Bryan D. Shaha, Greeley, for defendant-appellant.

SMITH, Judge.

Defendant, James Manners, appeals the judgment entered on his conviction by a jury for his participation in the kidnapping, robbery, and subsequent murder of Gary Statler. Manners claims the trial court erred in excluding certain defense evidence, in reversing its prior ruling severing the trial of co-defendant Edgar Lee Durre (Durre), in submitting a supplemental instruction in response to the jury's interrogatory, and in denying defense challenges for cause to two prospective jurors. We affirm.

The dead body of the victim, Gary Statler, was discovered in a field. Statler's hands were handcuffed behind his back; his legs, shoulders, eyes, and mouth were covered with tape. Statler's death resulted from stab wounds and a severed jugular vein.

Within days, police officers arrested Manners, co-defendant Durre, Durre's son Richard Baldwin, and two others. While Baldwin initially took full responsibility for Statler's killing, he subsequently implicated both Manners and Durre. Baldwin eventually pled guilty to second-degree murder and testified against Manners and Durre.

The testimony of Baldwin and other prosecution evidence revealed the following series of events. Manners, Durre, and Baldwin contrived to lure Statler, a homosexual, to a Denver motel for sexual purposes where they also intended to rob him.

After Statler met Manners, Durre and Baldwin at the motel, Durre enticed Statler to handcuff himself, and then pistol-whipped him.

They next took Statler to Baldwin's Aurora house where Manners and Durre had been living. After confining Statler to the basement of the house, Manners guarded Statler while Baldwin and Durre moved Statler's car from the motel to an airport parking lot.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Daniel Dailey, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

Thereafter, Statler was confined at the house for several days, during which time defendants forced Statler to write checks to a friend of Durre. Durre had his friend cash the checks and then gave Manners and Baldwin $1800 each.

At the end of this period, Manners, Durre and Baldwin took Statler to a ranch in Weld County. Once there, they put on surgical gloves at Durre's behest, and using Manners' knife, each defendant stabbed Statler several times. During the drive back to Aurora, Manners stated he was sure Statler was dead because he had cut his throat.

Manners and Durre were jointly tried. While Durre testified, Manners did not. Durre testified that he was at a "biker's place" at the time the crimes were committed; he claimed his involvement was limited to figuring the amounts of money in Statler's checking account and getting the checks cashed. Durre claimed he thought Baldwin was only putting a "scam" on a "fag," not that he had decided to rob or kill him.

The jury found Manners guilty of second degree kidnapping, aggravated robbery, and first degree felony murder.

### I.

Prior to trial, the district attorney in questioning Baldwin asked him if he had a "history of rolling fags". Baldwin replied: "I'm not going to lie, it's too late for that, in the past, when I was younger, I did a couple of times, I never killed anybody in my life, and I never hurt them, it's the same way I felt with this guy, I did it when I was 18. He was a homosexual, he ain't going to go around telling people you got a few dollars off him. In Indiana, a lot of times homosexuals get rolled downtown, because all they do is drive around looking for guys to pick up, that was in my younger—But I did it a few times."

Manners sought to admit Baldwin's statement for two purposes: (1) To impeach Baldwin's credibility under CRE 608(b) by showing that he was not a reluc-

tant follower but rather the primary initiator and planner of the incident; and (2) to show Baldwin's motive, intent, or opportunity under CRE 404(b) to continue a course of conduct of robbing homosexuals. Manners claims that Baldwin's statement supports his defense wherein Manners casts himself as an unwilling participant because of his continual intoxication at the time. Manners contrasts his alleged reduced role to that of Baldwin and Durre who he claims were involved as the primary perpetrators of the crime.

The trial court initially allowed defendants to lay a foundation for introducing Baldwin's statement in order to show that Baldwin's feelings toward Statler were similar to Baldwin's feelings toward prior homosexual victims. The court however reversed itself and refused, on cross-examination by Manners, to admit Baldwin's statement, finding that, under CRE 403, the prejudicial effect of admitting the statement would substantially outweigh its probative value.

Manners also sought to cross-examine Baldwin, under CRE 404(b), concerning the arrest of Baldwin and Durre in September 1980 for selling marijuana. This was an attempt by Manners to prove that Baldwin and Durre were the main perpetrators of the instant crime by showing their cooperation in a prior crime. Manners argues that this evidence would support his theory that he "was just an unwilling tag-along passenger" to a crime which Baldwin and Durre committed.

The trial court allowed Manners to cross-examine Baldwin on the prior arrest for the limited purpose of showing any motive or bias Baldwin might have for his testimony because of leniency Baldwin may have received for the prior offense in exchange for testifying. The court precluded Manners from implicating Durre in the prior arrest. Nonetheless, when Durre took the stand he testified both to Baldwin's prior homosexual robberies and to his own involvement in the prior marijuana sale.

### A.

Manners argues that the trial court abused its discretion by refusing to allow him to impeach Baldwin's testimony, under CRE 608(b), with testimony of specific instances of conduct allegedly showing Baldwin's propensity to rob homosexuals. Manners claims that exclusion of this evidence effectively deprives him of his defense. Manners asserts that his fundamental right to present exculpatory evidence overrides any prejudicial effect it may have on the case of his codefendant. We disagree.

A trial court has broad discretion in controlling the mode and extent of presenting evidence; and absent a clear abuse of discretion, rulings thereon will not be disturbed on review. *People v. Henry*, 195 Colo. 309, 578 P.2d 1041 (1978); *People v. Bynum*, 192 Colo. 60, 556 P.2d 469 (1976).

In *People v. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976), the Colorado Supreme Court recognized that an accused's right to impeach a witness' credibility is not absolute and may be limited so long as the limitation is consistent with an accused's right to confrontation. Thus, while the character of a witness for truth and veracity may be shown, impeachment may not be accomplished by attacking the general character of the witness. *People v. Taylor, supra; see* CRE 608(b).

Here, defense counsel attempted to show Baldwin's propensity to rob homosexuals. Baldwin had however admitted he was a willing participant in robbing Statler; his participation in the robbery was not at issue. And, since Baldwin's prior acts failed to include murder, they are irrelevant to impeach Baldwin's claimed unwilling participation in Statler's murder.

Moreover, Baldwin's statement is irrelevant to show possible bias or self-interest in cooperating with the prosecution or in shifting suspicion from himself. Baldwin had already confessed to his part in the incident and had pled guilty to second degree murder. *Cf. Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Burr v. Sullivan*, 618 F.2d 583 (9th Cir.1980).

We perceive no abuse of the trial court's discretion in its exclusion of Baldwin's statement for impeachment purposes. While Baldwin's prior robbery may show his propensity to commit a crime, it is not probative of his truthfulness or untruthfulness as a witness here. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 608 (1982). Thus, Baldwin's statement concerning his participation in prior robberies was properly held to be inadmissible to impeach his credibility under CRE 608(b).

### B.

Manners next argues that Baldwin's statement of past homosexual robberies is relevant under CRE 404(b) as a similar transaction to show that Baldwin, alone, committed the instant crime. Manners also claims the trial court improperly limited his cross-examination of Baldwin to probing only Baldwin's involvement in the prior marijuana arrest, to the exclusion of Durre's. Manners claims that Durre's involvement is relevant under CRE 404(b) as evidence of the intent of Baldwin and Durre, and that it somehow therefore diminishes his own culpability. There is no merit to these contentions.

Manners erroneously relies on *People v. Bueno*, 626 P.2d 1167 (Colo.App. 1981) for the proposition that evidence Baldwin had robbed homosexuals when he was 18 is relevant to show that Baldwin, not Manners, robbed and subsequently killed Statler. Under *People v. Bueno, supra*, a defendant may attempt to negate his guilt of the charged offense by introducing evidence that the defendant's identity is inconsistent with the identity of the perpetrator of similar transactions. Here, the identity of the persons involved in the present crime is not in issue.

Moreover, evidence of motive, intent, or opportunity, under CRE 404(b), offered to show that another party's guilt is inconsistent with and excludes the defendant's guilt, is irrelevant if the defendant is an accom-

**1352**

plice or an accessory. *See State v. Foster,* 33 N.C.App. 145, 234 S.E.2d 443 (1977); 1 A. Wigmore, *Evidence* § 139 (Tillers Rev. Ed.1983). Here, Manners is charged as an accomplice; any guilt the jury might infer because of Baldwin's past robberies is thus neither inconsistent with nor exclusive of Manner's guilt in the instant crime.

■ For similar reasons, the trial court properly precluded any cross-examination of Baldwin concerning Durre's involvement in the prior marijuana crime. Before admitting evidence of prior criminal transactions, the court must find: (1) There is a valid purpose for which the evidence is offered; (2) the evidence is relevant to a material issue of the case; and (3) the probative value of the evidence of the prior act, in light of the other evidence which is relevant to the issue, outweighs the prejudice to the defendant which would result from its admission. *People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979).

Here, evidence of Durre's prior arrest for selling marijuana is irrelevant to any issues in the instant case.

Finally, because the sale of marijuana is conduct bearing on a witness' general character rather than character for truthfulness or untruthfulness, it is likewise inadmissible for impeachment of the Durre's credibility under CRE 608(b). *See Weinstein's Evidence, supra.*

## II.

Manners next argues that the trial court abused its discretion by denying his motion for severance from co-defendant Durre. Manners claims his defense was prejudiced because it was antagonistic to Durre's and because Durre's testimony permitted the jury to conclude that Manners was guilty by association. We disagree.

■ Manners' motion for severance is addressed to the sound discretion of the trial court, *People v. Horne,* 619 P.2d 53 (Colo.1980), and denial of severance will not be overturned absent a showing that abuse of discretion resulted in prejudice to Man-

ners. *People v. Maestas,* 183 Colo. 378, 517 P.2d 461 (1973).

Abuse of discretion is determined according to the following factors: (1) Whether the number of defendants or complexity of evidence is such that the jury will probably confuse the evidence and law applicable to each defendant; (2) whether evidence inadmissible against one defendant would be considered against the other defendant, despite the issuance by the trial court of the proper admonitory instruction; and (3) whether the defenses are antagonistic. *People v. Gonzales,* 198 Colo. 450, 601 P.2d 1366 (1979); *People v. Maestas, supra; see* § 16–7–101, C.R.S. (1978 Repl.Vol. 8); Crim.P. 14.

Having reviewed the record, we fail to see how severance would have promoted a demonstrably fairer determination of guilt or innocence than that obtained here. *See People v. Maestas, supra.* Neither the number of defendants nor the complexity of evidence would precipitate jury confusion.

Manners' defense was not antagonistic to Durre's. The charges arose from a single episode, both defendants were identically charged, and each defendant asserted nonantagonistic defenses of general denial of participation. *See People v. Warren,* 196 Colo. 75, 582 P.2d 663 (1978). Moreover, Durre's testimony, while unsolicited by Manners, both buttressed Manners' intoxication defnese and attempted to establish an alibi for Manners.

■ Furthermore, the trial court properly followed II ABA, *Standards For Criminal Justice,* Standard 13–3.2 (1978), approved in *People v. Gonzales, supra.* The trial court initially granted Manners' motion for severance after co-defendant Durre testified. The court however rejoined the defendants when the prosecution elected to forego introducing evidence of Durre's inconsistent out-of-court statements which would have been inadmissible against Manners. Thus, the court's rejoinder is consistent with guidelines set out in Standard 13–3.2(a)(i).

Finally, since Durre took the stand, Manners had the opportunity to establish his defense both by cross-examining Durre and by commenting on Durre's testimony. Cf. *Eder v. People*, 179 Colo. 122, 498 P.2d 945 (1972). And, Manners was properly protected from evidence inadmissible against him by limiting instructions. The trial court properly advised the jury on the use of evidence it admitted, and there is a strong presumption that the jury followed the trial court's instructions. *See People v. Quintana*, 189 Colo. 330, 540 P.2d 1097 (1975).

We reject Manners' argument that his severance was mandated because the case against Durre was stronger. *See People v. Gregory*, 691 P.2d 357 (Colo.App.1984). And we conclude that, under the circumstances, the trial court did not abuse its discretion when it ultimately ordered that Manners and Durre should be jointly tried.

### III.

■ Manners next argues that the trial court erred in giving a supplemental instruction in response to a question which the jury sent to the court during deliberations. Manners objected to the supplemental instruction because he claimed the instruction highlighted an already given accomplice instruction. We have examined the record and find that objection is without merit. On appeal, however, Manners asserts a new ground for error.

Because Manners failed to give the trial court the opportunity to rule on the instruction based upon the grounds he now asserts, the instruction's validity on those grounds is unreviewable on appeal. Crim.P. 30; *People v. Shearer*, 650 P.2d 1293 (Colo.App.1982). Nonetheless, having reviewed the record, we find that Manners was not prejudiced by the court's supplemental instruction. *See People v. R.V.*, 635 P.2d 892 (Colo.1981).

### IV.

Manners lastly asserts that the trial court committed reversible error by denying his challenges for cause directed to two prospective jurors. Manners claims that prospective juror number one exhibited prejudicial bias when she stated her concern about being sequestered from her family for a month and when she expressed doubts about homosexuality and murder. Manners similarly claimed that prospective juror number two likewise displayed prejudicial bias against him because he allegedly disagreed with the presumption of innocence accorded to defendants by law. We disagree.

■ While it is fundamental to the defendant's right to a fair trial that he be provided with an impartial jury, *Maes v. District Court*, 180 Colo. 169, 503 P.2d 621 (1972), the trial court need not grant a challenge for cause if it is satisfied, from an examination of the juror, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at trial. *Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (1981); *see* § 16–10–103(1)(j), C.R.S. (1978 Repl.Vol. 8); Crim.P. 24(b)(1)(X).

Here, the trial court conducted rehabilitative questioning of both jurors. Juror number one expressed only a concern for her ability to participate based upon separation from her family. She stated, however, that she could find appropriate care for her children, and she expressed a willingness to set aside any possible resentment.

■ Juror number two agreed that the burden of proof of guilt is on the prosecution, that defendants were innocent in the eyes of the law, and that he would be able to follow the court's instructions. The court therefore found that juror number two "has unequivocally expressed his belief that he could follow the Court's instructions; that any preconceived opinion he might have about the reasons for Mr. Manners or Mr. Durre being charged in this offense ... are not such that he cannot set them aside and confine his deliberations to the evidence and the instructions on the law."

Upon reviewing the record, we find neither clear expressions of bias, *cf. Nailor v. People, supra,* nor any probability that the challenged jurors would not follow the court's instructions. *See Morgan v. People,* 624 P.2d 1331 (Colo.1981). Accordingly, the trial court did not abuse its discretion in denying defendant's challenge for cause, and we may not disturb that ruling on appeal. *McGonigal v. People,* 74 Colo. 270, 220 P. 1003 (1923).

The judgment is affirmed.

PIERCE and BABCOCK, JJ., concur.