The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Charles F. PENNESE, Defendant–Appellant.

No. 89CA1788.

Colorado Court of Appeals, Div. IV.

Nov. 21, 1991.

Rehearing Denied Jan. 16, 1992.

Certiorari Denied June 8, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge PLANK.

Defendant, Charles Pennese, appeals the judgments of conviction entered upon jury verdicts finding him guilty of assault in the first degree and crime of violence. We affirm.

The defendant was charged with first degree assault under § 18–3–202, C.R.S. (1986 Repl.Vol. 8B) together with a crime of violence under § 16–11–309, C.R.S. (1986 Repl.Vol. 8A). The charges arose from an assault by the defendant on his wife. The evidence indicated that, while the victim was restrained, defendant struck her repeatedly with his fist and also used a bat as a weapon to strike her. As a consequence of the assault the wife sustained a severe brain injury and is in a chronic vegetative state.

## I.

The defendant asserts that the jury verdict must be set aside because the information charged the defendant with first degree assault by use of a bat and that the evidence did not support that charge. We disagree.

### A.

■ Defendant argues first that there is no evidence that a bat was used to cause serious bodily injury. The record negates this contention.

The evidence reflects that one witness, who resided in the same apartment complex as the defendant, testified that, as he looked from his window, he saw the defendant hit the victim in the shoulder with a bat. The witness testified further that when he stepped away from the window to telephone 911 and report the assault, he saw the defendant's arm moving a bat up and down in a chopping motion. In addition, the physician who treated the victim for her head injuries testified that the cause could have been either a fist or a bat.

Accordingly, there is direct and circumstantial evidence from which the jury could conclude that the defendant assaulted the victim with a bat, as was charged in the information.

### B.

The defendant next argues that the jury should have been instructed that a fist is not a deadly weapon. In a related issue the defendant asserts that the trial court failed to give the correct answer to the jury's question whether fists constitute a deadly weapon.

The jury was instructed on the definition of a deadly weapon in accordance with § 18–1–901(1)(e), C.R.S. (1986 Repl.Vol. 8B). That statute states:

Deadly Weapon means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: a firearm, whether loaded or unloaded; a knife; a bludgeon, or any other weapon, device, instrument, material, or substance, whether animate or inanimate.

The defense did not object to the instruction or tender an alternative instruction.

During deliberation, the jury queried the court as to whether a fist was a deadly weapon. The trial court referred the jury back to the definitional instruction and the defendant did not object. The defendant now asserts that the court was obligated to tell the jury that a fist is not a deadly weapon.

In dictum, our supreme court has noted that *ordinarily* fists are not classed as weapons since they are not likely to produce death unless used in such a manner and under such circumstances as are reasonably calculated to produce death. *Smith v. People*, 142 Colo. 523, 351 P.2d 457 (1960). That dictum concerned a murder case, but we note that the statute also includes instruments capable of producing serious bodily injury.

■ Going beyond that dictum, in *People v. Ross*, 819 P.2d 507 (Colo.App.1991) (cert. granted November 12, 1991), a division of this court held that a fist is not a deadly weapon, and defendant asserts that *Ross* is controlling here. We elect not to follow *Ross* and rule that, in some circumstances, fists may be considered a deadly weapon. Our conclusion is based upon the facts at issue, the dictum in *Smith, supra,* and the statute which specifies that a deadly weapon may be any device, material, or substance which in the manner of its use is capable of producing death "or serious bodily injury."

Defendant also presents *People v. Mozee*, 723 P.2d 117 (Colo.1986) to support his argument that fists are not deadly weapons. In *Mozee*, the court used a hypothetical situation which involved the use of fists to explain the difference between first and second degree assault coupled with crimes of violence. However, we do not interpret that discussion in *Mozee* to be a holding that fists can never be deadly weapons.

■ Accordingly, we find no error in the trial court's instruction on deadly weapon

or in the court's response to the jury's question on deadly weapon.

## II.

The defendant next contends that error resulted from the failure of the trial court to instruct the jury that the prosecution bore the burden of proving the absence of heat of passion beyond a reasonable doubt and that the jury verdict form failed to provide a clear opportunity for the jury to express whether the defendant acted in the heat of passion.

### A.

The jury received the following instruction concerning first degree assault:

> If you find the Defendant not guilty of First Degree assault, you need not consider this instruction. If, however, you, find the Defendant guilty of First Degree assault, you must then consider the issue of provocation.
>
> The evidence in this case has raised the issue of provocation. Provocation means that the Defendant's acts were performed, not after deliberation, but upon a sudden heat of passion caused by a serious and highly provoking act of the intended victim which affected the Defendant sufficiently to excite such an irresistible passion in a reasonable person. It is the burden of the prosecution to prove beyond a reasonable doubt, a lack of provocation for the Defendant's acts. You should indicate on the provided verdict form whether or not the prosecution has proven a lack of provocation beyond a reasonable doubt.

A similar instruction was given for the lesser offense of second degree assault. *See COLJI–Crim.* No. 10:20 (1983). The record manifests no objection or tendered alternative instruction by the defendant at trial.

■ Defendant's argument focuses primarily on the fact that this instruction directed the jury to consider whether the People had proven the elements of first degree assault before considering heat of passion and provocation. Defendant asserts that heat of passion is an affirmative defense and the jury should have been instructed to consider heat of passion when deciding if defendant was guilty of first degree assault.

The General Assembly has not chosen to classify heat of passion as an affirmative defense which exonerates offenders from the offense of first degree assault. *People v. Seigler,* (Colo.App. No. 89CA2030, November 7, 1991); *People v. Carrier,* 791 P.2d 1204 (Colo.App.1990). Rather, § 18–3–202(2)(a), C.R.S. (1986 Repl.Vol. 8B) provides that if the assault occurs in heat of passion then the penalty is to be reduced. Hence, heat of passion was properly treated in the instruction.

### B.

■ The defendant also argues that the jury verdict form was defective because it failed to provide an opportunity for the jury to express whether the defendant acted in the heat of passion.

The record reflects that the verdict form allowed the jury, if it found the defendant guilty of first or second degree assault, to assign the mitigator of heat of passion. Thus, the verdict form provided to the jury was proper.

## III.

■ The defendant next contends that the trial court erred when it allowed the prosecution to introduce evidence of defendant's prior felony convictions as character evidence. Defendant also asserts error because a limiting instruction on this evidence was not given by the court. We disagree.

The record reflects that, on cross-examination of defendant's girlfriend, the defendant's counsel attempted to elicit that the defendant's aggression was directed only at a car until the victim provoked him. He then elicited that this aggressive behavior against the car was unusual, that is, that the girlfriend had never witnessed this type of aggression before. Finally, counsel elicited testimony that the defendant was an "easy-going person" and had never harmed the witness.

Over defendant's objection, the trial court ruled that the defendant had opened the door to the subsequent questions on defendant's character. The prosecution did not introduce any official documentation of defendant's crimes but examined the girlfriend and the defendant's only witness, his sister, regarding their knowledge of previous offenses. The defendant did not request a limiting instruction at the time this evidence was introduced or at the conclusion of the trial.

The record supports the trial court's finding that the defendant "opened the door" for the prosecution to pursue questions on the defendant's character. Hence, the questioning was proper. *People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (1979). Also, the failure of the court to give a limiting instruction, absent a defense request, is not reversible error. *People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977).

### IV.

Defendant next contends that a witness' reference to his prior criminality constitutes reversible error. We disagree.

The witness' statements consisted of how the defendant was "out" and how the defendant had previously threatened him. The statements were not elicited by the prosecution. The defendant did not object to the statements.

When a defendant believes he is prejudiced by an unresponsive answer, he must, at least, object at the time of answer, move to strike, or request the court to instruct the jury to disregard it. Furthermore, the mere reference to a defendant's past criminal record is not *per se* prejudicial. *People v. Abbott*, 690 P.2d 1263 (Colo.1984).

If the defendant does not object to such statements, as was the case here, a plain error standard of review applies. *People v. Aragon*, 186 Colo. 91, 525 P.2d 1134 (1974).

The statements were part of the total picture surrounding the offense. The witness' description of the defendant's threats to him were mentioned during the defendant's cross-examination of the witness. Defendant made no objections or mistrial motions. Under such circumstances, we find no plain error.

### V.

Finally, the defendant contends that the prosecutor made prejudicial remarks during the trial and in closing argument and that these remarks deprived him of a fair trial. We perceive no basis for reversal.

Defendant complains of certain questions and argument by the prosecutor, but the defendant did not object to most of the questions and comments of which he now complains. Accordingly, a plain error standard of review applies to all questions and comments except those objected to. *People v. Aragon, supra.*

Some of the remarks made during trial and complained of referred to the use of a bat. The record reflects testimony on use of a bat. Thus, the argument on these comments is without merit. Also, the other remarks during trial of which defendant complains do not rise to the level of plain error.

The only objection asserted relative to closing argument concerns remarks about the use of fists as deadly weapons. The defendant questioned the comment, and the trial court indicated that the jury could use the deadly weapon instruction and overruled the defendant's objection. We find no error.

The scope of final arguments rests in the sound discretion of the trial court, and its ruling thereon will not be disturbed on appeal in the absence of gross abuse of discretion resulting in prejudice and a denial of justice. *People v. Moody*, 676 P.2d 691 (Colo.1984).

Accordingly, the judgment is affirmed.

HUME and MARQUEZ, JJ., concur.