The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Ron Adam SEIGLER, Defendant–
Appellant.

No. 89CA2030.

Colorado Court of Appeals,
Div. A.

Nov. 7, 1991.

Rehearing Denied Dec. 12, 1991.

Certiorari Granted June 22, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Robin Desmond, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

The defendant, Ron Adam Seigler, appeals a judgment of conviction of second degree murder and crime of violence. He asserts that the trial court's denial of his motions to recuse, to order a competency evaluation, and to exclude a portion of his videotaped statement constitute reversible error. In what we perceive to be his principal contention, he argues that the trial court's refusal to instruct the jury on heat of passion as it relates to second degree murder was error. We affirm.

The defendant was charged with one count of first degree murder and one count of crime of violence in the shooting death of his roommate, and a jury trial was set for October 2, 1989. On September 29, the trial court denied the defendant's motion to continue the trial, and on October 2, it denied his motion for a competency evaluation.

It also refused to grant his motions to recuse the court and for mistrial or, alternatively, for leave for counsel to withdraw and for appointment of new counsel. According to the accompanying affidavits, these motions were based upon the trial court's alleged prejudice against the defendant and his counsel as evidenced by its refusal to grant the competency hearing because of the court's belief that the request was a defense "ploy" to delay the trial.

During the trial, the defendant moved to exclude a portion of his videotaped statement on the grounds that it contained irrelevant, but highly prejudicial, information. Specifically, the defendant objected to the portion in which he talked about the deaths of three people with whom he had had relationships and to the portion in which he denied making a statement that he intend-ed to kill his roommate. This motion was denied.

The evidence at trial indicated that the defendant and his roommate had been homosexual lovers and that the roommate had recently become sexually involved with another man. There was also evidence that the defendant and his roommate had engaged in a physical altercation prior to the roommate's death from a rifle shot. There was conflicting testimony as to whether the wound was self-inflicted, whether the defendant admitted to the shooting, and whether he had previously made threats to kill the victim. The jury was instructed on first degree murder and on the lesser included offenses of second degree murder, all degrees of manslaughter, and criminally negligent homicide.

The instructions identified, as elements of "provoked passion" manslaughter, that the act causing death must have been performed under a sudden heat of passion that arose from a provocation by the victim which would affect a reasonable person and did affect the defendant and that it occurred where there was no interval between the provocation and the killing "sufficient for the voice of reason and humanity to be heard." The jury was also instructed that the burden of proving each element of a lesser offense rests with the prosecution. The court refused the defendant's tendered instruction identifying heat of passion as an affirmative defense to first or second degree murder.

## I.

We consider first the defendant's contention that the court committed reversible error in its denial of his various motions.

## A.

The defendant argues that when the trial court denied his motion for a competency evaluation, it exhibited a bias against him and his counsel which required recusal. We disagree.

Under § 16–6–201(1)(d), C.R.S. (1986 Repl.Vol. 8A), a judge must be disqualified

if "[h]e is in any way interested or prejudiced with respect to the case, the parties, or counsel." And, when a motion for disqualification is filed, the court must accept the facts alleged in the motion and supporting affidavits as true and must determine, as a matter of law, its adequacy.

■ To be legally sufficient, the facts alleged in the motion must establish to the satisfaction of a reasonable mind that the judge has a bias or prejudice that will in all probability prevent him or her from dealing fairly with the defendant. *Walker v. People,* 126 Colo. 135, 248 P.2d 287 (1952). However, "[p]rejudice must be distinguished from the sort of personal opinions that as a matter of course arise during a judge's hearing of a cause." *Smith v. District Court,* 629 P.2d 1055 (Colo.1981).

In this case, the defendant filed two motions to recuse. The accompanying affidavits asserted that the judge displayed bias when he stated that the motion for a competency hearing was a "ploy" to delay the trial. Although the trial court improperly denied these motions because it found the affidavits contained false statements, we conclude that its decision that the motion and affidavits were legally insufficient to require recusal was correct for other reasons. *See People v. Baca,* 193 Colo. 9, 562 P.2d 411 (1977) (a correct result reached upon an erroneous analysis is not grounds for reversal).

■ Section 16–8–111, C.R.S. (1986 Repl. Vol. 8A) provides that when the question of a defendant's incompetency to proceed is raised, the court shall make a preliminary finding and shall hold a hearing upon the request of either counsel.

In *People v. Morino,* 743 P.2d 49 (Colo. App.1987), this court addressed the nature of the showing necessary to raise the issue of a defendant's competency. We observed that § 16–8–110(2)(a), C.R.S. (1986 Repl. Vol. 8A) requires a suspension of proceedings for a hearing on competency "only in those instances in which the judge 'has reason to believe' that the defendant is incompetent." We also stated that:

[T]here is an initial presumption of competency and no defendant is entitled as of right, to a competency examination or hearing merely by making a demand therefore, *particularly if that demand is made only after the trial has commenced.* The trial judge who, under such circumstances, has had the opportunity of observing defendant, his actions and general demeanor, has substantial discretion in determining whether an issue respecting his competency has been raised. (emphasis added)

Here, defense counsel refused to give specific reasons to support his opinion that the defendant was incompetent, saying only that he based his opinion on privileged information. He even refused the court's offer of an *in camera* hearing on the issue. *See A v. District Court,* 191 Colo. 10, 550 P.2d 315 (1976). Although in *Morino* the motion for a competency hearing was made after the jury was impaneled, the rationale supporting that decision applies here. The court in both instances had ample opportunity to observe the defendant. In addition, here the trial judge noted that the defendant had ably assisted in his case. Consequently, we hold that the court correctly ruled that the issue of competency had not been properly raised.

"The general rule of law is that what a judge learns in his judicial capacity is a proper basis for judicial observations, and that the use of such information is not the kind of matter that results in disqualification." *Smith v. District Court, supra.*

Here, the court's statement that the motion for a competency hearing was a "ploy" to delay the trial was adequately supported by what the judge learned in his judicial capacity during argument on pretrial motions concerning the defendant's competency. We agree with the trial court that such a statement does not constitute the kind of prejudice required for recusal.

## B.

The defendant also contends that the trial court improperly admitted into evidence portions of his videotaped statement to the police. In this statement, the defendant denied an accusation that he told others

that he intended to kill the victim. He also acknowledged that he had had three prior lovers who had died and that the victim was aware of this. The defendant argues that because these statements were irrelevant and highly prejudicial to him, their admission in evidence constitutes reversible error. We disagree.

"A determination that the probative value of evidence outweighs prejudice to the defendant is left to the discretion of the trial court and will not be overturned on appeal in the absence of an abuse of discretion." *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990). Such abuse will be found by a reviewing court only if an evidentiary ruling was "manifestly arbitrary, unreasonable, or unfair." *King v. People,* 785 P.2d 596 (Colo.1990).

█ In this case, there was substantial evidence that the defendant had manifested an intent to kill the victim. Additionally, the defendant made no admission of guilt regarding the deaths of his former lovers. Moreover, these comments, while not excised from the tape, were not mentioned or highlighted by either the court or the prosecution. No reference was made to them during the examination of witnesses or during the prosecution's opening or closing arguments. Therefore, we conclude the trial court did not abuse its discretion in admitting into evidence these portions of the videotaped statement.

## II.

█ The defendant's principal contention is that Colorado's statutory scheme requires him to assume the burden of proof in violation of his due process rights. He acknowledges our holding in *People v. Carrier,* 791 P.2d 1204 (Colo.App.1990) that the General Assembly has not chosen to include heat of passion as an affirmative defense to second degree murder. *See* § 18–1–701, et seq., C.R.S. (1986 Repl.Vol. 8A). However, he claims that because the statute identifies heat of passion manslaughter as a separate offense, the elements of which must be proved by the prosecution, it is almost never charged by the People. Instead, that crime invariably goes to the jury as a lesser uncharged offense, as it did in this case. Consequently, he argues, the prosecution neither seeks to establish the presence of the elements of provoked passion manslaughter nor affirmatively establishes their absence where first or second degree murder is charged. Thus, the defendant contends that the burden of proof of provocation falls on the accused.

The defendant asserts that instructing the jury on heat of passion, either as an implied element of or as an affirmative defense to second degree murder, would remedy this difficulty because such an instruction would require the prosecution to disprove the elements of heat of passion if some evidence of provocation were raised at trial. We disagree with the defendant's analysis.

The prosecution must prove beyond a reasonable doubt every element necessary to constitute the crime charged. *Leonard v. People,* 149 Colo. 360, 369 P.2d 54 (1962). The General Assembly determines the legal components of criminal liability and decides what circumstances constitute justification or excuse for criminal conduct. *People v. Carrier, supra.*

The defendant relies on *Mullaney v. Wilber,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) in which the Court held that: "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of heat of passion on sudden provocation when the issue is properly presented in a homicide case."

However, *Mullaney* arose under a significantly different statutory scheme than is at issue here. There, a Maine statute made the absence of heat of passion a part of the definition of "malice aforethought," and it made such malice an *element* of the crime of murder. The statute further provided that if the prosecution proved that the homicide was intentional and unlawful, malice aforethought (and therefore the absence of heat of passion) was conclusively presumed unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion. The Court held

that this statute unconstitutionally shifted the burden of proof to the defendant. Our statutory scheme creates no presumptions which result in shifting the burden of proof to the defendant as was the case in *Mullaney*.

The defendant's reliance on *U.S. v. Lofton*, 776 F.2d 918 (10th Cir.1985) is also misplaced. There, the defendant was charged under federal law with first degree murder and was convicted of second degree murder. The court concluded that the trial court's failure to instruct the jury adequately on the defendant's heat of passion defense and its effects on the government's burden of proof constituted plain error. Noting that malice was an element of murder under the federal statute and that the heat of passion defense was "directly at odds with malice," the court held that the trial court was required to "differentiate second degree murder from manslaughter on the basis of the distinction between malice and heat of passion."

In contrast, neither the Colorado second degree murder statute nor the jury instructions for that offense refer to malice. *See* § 18-3-103, C.R.S. (1986 Repl.Vol. 8) and *COLJI-Crim.* No. 9:05 (1983). Heat of passion manslaughter and second degree murder both include the mental culpability requirement of "knowingly." The offenses are distinguished only by the "provocation-inducing-an-irresistible-passion" element required in heat of passion manslaughter. *See* § 18-3-104(1)(c), C.R.S. (1986 Repl.Vol. 8A). Consequently, the distinction that concerned the *Lofton* court regarding incompatible mental culpability requirements for the two offenses does not arise under Colorado's statutory scheme.

The defendant further argues that, under the instructions actually given, the jury would only consider heat of passion manslaughter if it found the defendant not guilty of second degree murder, but it would not address the mitigating effects of heat of passion if it found him guilty. Again, we disagree.

In *Lofton*, the jury was instructed that if it found the defendant not guilty of first degree murder, it must then consider second degree murder. Only if it found the defendant not guilty of second degree murder could it consider a charge of manslaughter.

Here, the jury was instructed that if it found the People had failed to prove the elements of first degree murder beyond a reasonable doubt, it should consider *any* of the lesser offenses, not just second degree murder. A statement of the elements of second degree murder, provoked passion manslaughter, reckless manslaughter, caused or aided suicide manslaughter, and criminally negligent homicide followed. In the same instruction, the court reminded the jury that "the burden of proof is always upon the prosecution to prove beyond a reasonable doubt each and every element of any lesser included offense...." Additionally, in both the instructions and in the defense's closing argument, the jury was directed to consider the jury instructions as a whole.

Provoked passion manslaughter was one of several lesser offenses which the jury was instructed to consider upon a finding of not guilty of first degree murder. The defendant does not claim that the evidence was insufficient to support the verdict of second degree murder. Based on the instructions given, there is no reason to believe the jury failed to consider whether the prosecution proved that the defendant did not act under the heat of passion. Accordingly, we hold that the instructions, as given to the jury, adequately described the prosecution's burden of proof and did not unconstitutionally shift the burden of proof to the defendant in violation of his due process rights.

The defendant also asserts that Colorado's homicide statutes violate principles of equal protection. He argues that there is a parallel between these statutes and the assault statutes which were amended by the General Assembly in 1979 after the supreme court held in *People v. Montoya*, 196 Colo. 111, 582 P.2d 673 (1978) that "a person charged with first-degree assault, who can establish that he acted in 'heat of passion,' is constitutionally protected against receiving a greater penalty than he could

have received had he caused the death of his victim."

■ This contention brings into question the constitutionality of a statute and is therefore outside of the jurisdiction of this court. Section 13-4-102(1)(b), C.R.S. (1987 Repl.Vol. 6A). Moreover, questioning of the constitutionality of a statute for the first time in an appellate brief is not the appropriate manner to raise an issue for appellate review. *See Manka v. Martin*, 200 Colo. 260, 614 P.2d 875 (1980).

To the extent that we have jurisdiction of the issues raised, the judgment is affirmed.

ROTHENBERG, J., concurs.

TURSI, J., specially concurs.

Judge TURSI specially concurring.

I specially concur.

I agree that the trial court's refusal to instruct on heat of passion as an affirmative defense to second degree murder was not error. Nevertheless, because the culpable mental state of second degree murder, § 18-3-103, C.R.S. (1986 Repl.Vol. 8b) and heat of passion manslaughter, § 18-3-104(1)(c), C.R.S. (1986 Repl.Vol. 8B), the pattern instructions *COLJI-Crim.* No. 9:05 and No. 9:08 (1983), and the critical instructions as given here failed to address the mitigating nature of heat of passion, I write separately.

When, as here, there is sufficient evidence to instruct on second degree murder and also to instruct on the lesser offense of heat of passion manslaughter, I believe the better practice would be to instruct the jury that if it finds the culpable mental state of knowingly as required for second degree murder, it should, after weighing all the evidence whether introduced by the People or the defendant, determine if the homicidal act was performed upon a sudden heat of passion caused by a sufficiently provoking act of the intended victim as required for a verdict of manslaughter.

Alternatively, a special mitigating interrogatory instruction could be addressed to the jury directing that, if it finds the act causing death to have been knowingly committed, it must determine whether, under all the evidence, the act was performed under heat of passion as defined in § 18-3-104(1)(c). An example of this type of instruction is the special enhancing interrogatory used when a crime of violence is charged.

Absent either of these alternatives, or some comparable course of action, once a jury finds the culpable mental state of knowingly as an element of second degree murder, there is little reason or incentive for it to consider whether the prosecution has proven the element of heat of passion necessary for a verdict of manslaughter. Thus, in the interest of fundamental fairness and to avoid the anomalous problem of instructing a jury to determine if the lesser offense has been proven beyond a reasonable doubt by the People, an offense with an element that the People have contested throughout the trial, one of the above alternatives, or some comparable instruction should be given to the jury.