The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Clifford **WADLEY**, Defendant–Appellant.

No. 92CA0716.

Colorado Court of Appeals, Div. II.

June 30, 1994.

Rehearing Denied Aug. 4, 1994.

Certiorari Denied Feb. 21, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, David M. Furman, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge KAPELKE.

Defendant, Clifford Wadley, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder. Defendant also seeks review of the sentences imposed by the trial court for the murder conviction as well as a conviction for first degree burglary. We affirm.

On April 19, 1991, defendant's eight-year-old daughter told him that her maternal grandfather had molested her in November or December of 1990. Three days later, defendant went to the grandfather's house, entered without permission, and shot him.

The trial court sentenced defendant to consecutive sixteen-year and ten-year terms for the murder and burglary convictions.

## I.

Defendant challenges his conviction for second degree murder based on alleged defects in the trial court's jury instructions on heat of passion manslaughter. His argument is twofold.

### A.

Defendant's first contention is that the trial court's instructions to the jury and the prosecutor's remarks during closing argument regarding heat of passion manslaughter improperly shifted the burden of proof to defendant on the issue of provocation. We disagree.

Under § 18–3–104(1)(c), C.R.S. (1986 Repl. Vol. 8B), the prosecution has the burden of proving the elements of the offense of heat of passion manslaughter, including provocation by the victim. *People v. Seigler*, 832 P.2d 980 (Colo.App.1991).

The jury was instructed on the elements of first degree murder and, in a separate instruction, on the elements of the lesser offenses of second degree murder, heat of passion manslaughter, and criminally negligent homicide. In the latter instruction, the court advised the jury that:

the burden is always upon the prosecution to prove beyond a reasonable doubt each and every material element of any lesser included offense ... the law never imposes upon a defendant in a criminal case the burden of calling any witnesses or producing any evidence.

In another instruction, the court reminded the jury that the prosecution, not the defendant, always has the burden of proving the elements of a crime beyond a reasonable doubt.

These instructions mirror those given to the jury in *People v. Seigler, supra,* in which a division of this court concluded that the instructions adequately advised the jury of the elements of the offense and did not impermissibly shift to the accused the burden of proof as to provocation. We also conclude that these instructions appropriately describe the elements of the offense and the prosecution's burden of proof.

Defendant also maintains that the trial court's instructions to the jury with respect to first and second degree murder should have indicated that the prosecution had the burden of proving the absence of provocation. This contention was rejected in *People v. Seigler, supra,* and, for the reasons there expressed, we also reject it here. *See also People v. Pennese*, 830 P.2d 1085 (Colo. App.1991).

Defendant further claims that there was an impermissible shifting of the burden of proof of provocation as a result of the

prosecutor's statement during closing argument that the prosecution had failed to prove that defendant acted in a heat of passion.

In closing argument, the prosecutor first argued that defendant could be found guilty of first degree murder because the evidence showed that he had killed the victim with intent and after deliberation. The prosecutor then told the jury:

> You are only to go on and consider lesser offenses if we have failed to prove beyond a reasonable doubt the crime of First Degree Murder. . . . The next lesser included offense is called Heat of Passion Manslaughter. We have not proved to you beyond a reasonable doubt Heat of Passion Manslaughter. And therefore you may not render a verdict of guilty on Heat of Passion Manslaughter.

After making that statement, the prosecutor went on to argue that defendant had not acted upon a sudden heat of passion because there had been a sufficient interval between defendant's learning of his daughter's molestation and his killing of the victim to allow defendant to function rationally.

Because defendant did not make a contemporaneous objection to the prosecutor's argument, we apply a plain error standard on review. *See Wilson v. People,* 743 P.2d 415 (Colo.1987). Plain error occurs when we can say "that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Kruse,* 839 P.2d 1, 3 (Colo.1992).

Allegations of improper argument must be evaluated in the context of the argument as a whole, and in light of the evidence presented at trial. *People v. Gutierrez,* 622 P.2d 547 (Colo.1981); *People v. Marin,* 686 P.2d 1351 (Colo.App.1983).

While we do not approve of the prosecutor's remark regarding his failure to prove that defendant had acted under a sudden heat of passion, under the circumstances presented here, we conclude that the comment does not rise to the level of plain error.

The prosecutor's closing argument as a whole did not contradict the instructions and would not have led the jury to believe that defendant had the burden of proving that he acted in a heat of passion. During his closing remarks, the prosecutor reminded the jury that the prosecution had the burden of proving all elements of the crimes charged, including, with respect to manslaughter, that defendant was acting upon a sudden heat of passion. Thus, in the context of the argument as a whole, and in light of the evidence presented at trial, the prosecutor's comment did not so undermine the fundamental fairness of the trial as to cast doubt on the reliability of the judgment of conviction.

### B.

█ Defendant also claims that, under the instructions given, the jury would only have considered whether defendant acted under heat of passion if it found him not guilty of second degree murder and that, because it found him guilty of second degree murder, it was not permitted to consider the mitigating aspects of heat of passion manslaughter. In *People v. Seigler, supra,* this contention was specifically rejected, and we also reject it. *See also People v. Pennese, supra.*

Here, as in *People v. Seigler, supra,* the court instructed the jury that if it found that the prosecution had failed to prove the elements of first degree murder beyond a reasonable doubt, it could consider not only second degree murder but any of the lesser offenses. The court then recited the elements of each of the lesser offenses, including heat of passion manslaughter.

The instructions did not suggest that if the jury found defendant guilty of second degree murder it should not consider the elements of heat of passion manslaughter, or that if it found defendant guilty of heat of passion manslaughter, it should not consider whether he committed the offense of criminally negligent homicide. Hence, the instructions did not establish an order of priority of the lesser offenses. We perceive no error in the instructions given.

### II.

█ We also disagree with defendant's contention that the trial court erred in refusing to give his tendered instruction expand-

ing the definition of the time element for heat of passion manslaughter.

■ At the outset, we note that an elemental instruction in the language of the applicable statute is usually sufficient to advise the jury of the nature of the offense. *See People v. R.V.*, 635 P.2d 892 (Colo.1981); *People v. Wilson*, 791 P.2d 1247 (Colo.App. 1990). In addition, the use of an excerpt from a court opinion to embellish jury instructions is generally disfavored. *See Evans v. People*, 706 P.2d 795 (Colo.1985).

The trial court rejected the following instruction tendered by defendant:

When deciding whether there was an 'interval sufficient for the voice of reason and humanity to be heard' as used in Instruction No. ——, you should consider human nature as it is generally understood, the particular emotional state of the accused, and the surrounding circumstances of the time. The victim's provocation need not occur immediately before the act causing death.

This proposed instruction tracks the language in *Coston v. People*, 633 P.2d 470, 473 (Colo.1981) regarding what "cooling time" constitutes a sufficient interval to allow a person to function rationally after having been severely provoked.

The language of the instruction given by the court was based on § 18–3–104(1)(c), C.R.S. (1986 Repl.Vol. 8B) and *COLJI–Crim.* No. 9:08 (1983). Because the instruction adequately informed the jury as to the elements of heat of passion manslaughter, no further definitions were necessary. *See People v. Lanari*, 811 P.2d 399 (Colo.App.1989), *aff'd in part & rev'd in part on other grounds*, 827 P.2d 495 (Colo.1992).

Moreover, the terms used in the court's heat of passion manslaughter instruction can be generally understood by persons of common intelligence and thus needed no further definition. *See People v. Deadmond*, 683 P.2d 763 (Colo.1984); *People v. Lanari, supra.* Thus, we perceive no error in the trial court's refusal to give the tendered instruction.

■ Defendant also argues, for the first time on appeal, that his tendered instruction was a "theory of the case" instruction and that the trial court was therefore required to submit it to the jury. Because defendant failed to give the trial court the opportunity to rule on the tendered instruction based on the grounds he now asserts, his new contention is not reviewable on appeal. *See People v. Manners*, 713 P.2d 1348 (Colo.App.1985).

### III.

■ Defendant next contends that the trial court committed reversible error in instructing the jury that the affirmative defenses of self-defense and defense of a third person did not apply in this case. Again, we do not agree.

Defendant tendered two instructions regarding the affirmative defenses of self-defense and defense of a third person. The court rejected the instructions, determining that the defenses lacked evidentiary support.

Over defendant's objection, however, the court gave the following jury instruction:

You are further instructed that the Court has made a ruling that the Defendant may not rely on the affirmative defenses of self defense or defense of a third person in this case.

According to the trial court, this instruction was appropriate because pretrial publicity about the case and questions posed to some of the jurors during voir dire might have left them with the impression that self-defense and defense of a third person were issues in the case.

Defendant maintains that the court erred by specifically instructing the jury that the defenses were inapplicable. He also claims that, at a minimum, the court should have given an additional instruction defining the elements of those defenses. He urges that the court's instruction, coupled with the lack of definition, may have confused the jury about the difference between those defenses and the element of provocation which distinguishes heat of passion manslaughter from murder. Similarly, he argues that the court's instruction may have left the jury with the impression that the court did not

believe that the mitigating heat of passion elements had been shown.

■ Generally, a trial court should not give instructions which suggest issues that are not presented by the pleadings or supported by the evidence. *Martinez v. People,* 166 Colo. 524, 444 P.2d 641 (Colo.1968).

Trial court errors do not require reversal, however, unless they affect the substantial rights of a defendant. Crim.P. 52(a). Here, even if the giving of this instruction were deemed improper, it did not materially and substantially prejudice the defendant or affect the outcome of the trial. *See Topping v. People,* 793 P.2d 1168 (Colo.1990).

Moreover, defendant has not demonstrated that the instruction could have created confusion as to the meaning or applicability of the heat of passion manslaughter instruction, or that the jury could have inferred from this instruction that the court did not believe that the mitigating elements for heat of passion manslaughter had been established.

Accordingly, we conclude that any error in giving this instruction was harmless.

## IV.

■ Defendant's final contention is that the court erred in imposing consecutive aggravated sentences under § 16–11–309, C.R.S. (1986 Repl.Vol. 8A) without following the procedural safeguards of §§ 16–11–309(4) and 16–11–309(5), C.R.S. (1986 Repl.Vol. 8A). We disagree.

Section 16–11–309(1)(a), C.R.S. (1986 Repl. Vol. 8A) provides that a defendant convicted of a crime of violence must receive an aggravated sentence and that a person convicted of two separate crimes of violence arising out of the same incident must receive consecutive, rather than concurrent, sentences.

Under § 16–11–309(4), a defendant may not receive an aggravated sentence for committing a crime of violence unless he is charged in a separate count in the indictment or information with committing such a crime.

Section 16–11–309(5) further provides that, for the penalty provisions of § 16–11–309(1)(a) to apply, the fact-finder must "make a specific finding as to whether the accused did or did not use, or possessed and threatened to use, a deadly weapon during the commission of such crime...."

Here, the information originally charged defendant with committing first degree burglary, first degree murder, and two crimes of violence. The information alleged that defendant committed one crime of violence during his commission of the burglary and the other during his commission of the murder. On the first day of trial, the prosecutor dropped the crime of violence count associated with the murder charge.

The jury was properly instructed on the remaining crime of violence charge, and it made a specific finding that defendant used a deadly weapon during the commission of the burglary. Thus, the procedural requirements of § 16–11–309 were met with respect to that charge. *See* §§ 16–11–309(4) and 16–11–309(5).

Defendant claims that because the crime of violence count associated with the murder charge was dropped, and because the jury did not make a specific finding that defendant used a deadly weapon during the commission of the murder, the trial court erred in sentencing him under § 16–11–309 for his second degree murder conviction.

In *People v. Terry,* 791 P.2d 374 (Colo. 1990), our supreme court determined that if a substantive criminal statute expressly requires that the defendant be sentenced in accordance with § 16–11–309, the procedural safeguards otherwise mandated by §§ 16–11–309(4) and 16–11–309(5) need not be satisfied. Thus, whenever reference to sentencing under § 16–11–309 appears in a substantive statute, § 16–11–309 is intended to serve as a presumptive penalty statute. *People v. Terry, supra.*

The sentencing provision in the substantive statute under which defendant was convicted for second degree murder provides that if a person is convicted, the court "shall sentence the defendant in accordance with the provisions of section 16–11–309." Section 18–3–103(4), C.R.S. (1986 Repl.Vol. 8B). This substantive statute therefore obviates the need to comply with the procedural safe-

guards contained in §§ 16–11–309(4) and 16–11–309(5). *See People v. Terry, supra.*

Accordingly, the trial court properly imposed consecutive aggravated sentences pursuant to § 16–11–309(1)(a) for defendant's first degree burglary and second degree murder convictions, which arose from the same criminal episode.

The judgment of conviction and the sentence imposed are affirmed.

METZGER, J., concurs.

JONES, J., dissents.

Judge JONES dissenting:

I respectfully dissent.

The chickens merely mentioned by Judge Tursi in his special concurrence in *People v. Seigler,* 832 P.2d 980 (Colo.App.1991), have, it seems, come home to roost in this case.

Judge Tursi noted that because the culpable mental state of second degree murder, § 18–3–103, C.R.S. (1986 Repl.Vol. 8B), and of heat of passion manslaughter, § 18–3–104(1)(c), C.R.S. (1986 Repl.Vol. 8B), is the same, namely, "knowingly," it would operate in the interests of fundamental fairness to inform the jury, whether by instruction or by special interrogatory, of the mitigating nature of heat of passion manslaughter, *vis-a-vis,* second degree murder. He further noted that the applicable pattern jury instructions, *COLJI–Crim.* No. 9:05 and No. 9:08 (1983), and the general instructions given to the jury failed to address the mitigating nature of the lesser charge as to the greater.

Finally, he realistically predicted that once a jury has found the "knowingly" *mens rea* element, "there is little reason or incentive for it to consider whether the prosecution has proven the element of heat of passion necessary for a verdict of manslaughter." *People v. Seigler, supra,* at 985.

Judge Tursi's prescience has been rewarded, dubiously, in this case. Here, for the same reasons he mentioned in *Seigler,* not only did the jury have no reason or incentive to go beyond the *mens rea* element which applies to both the greater and the lesser charges, but the prosecution also proclaimed

to the jury that it had not proven the heat of passion manslaughter charge. Thus, the jury had a double incentive to avoid searching the evidence for mitigation to the second degree murder in the form of heat of passion and, I believe, placed the defendant in the position of having had to carry the burden of proof as to the lesser charge.

Here, unlike the case in *Seigler,* the prosecution obviously hoped that, if it had not proven first degree murder, it had, at least, shown the culpable mental state of "knowingly" as to second degree murder. Thus, it did not wish to have the jury focus on the proof of that mental state as to the charge of heat of passion manslaughter. And, in stating affirmatively, under these circumstances, that heat of passion manslaughter charge had not been proven, while arguing that, indeed, the culpable mental state necessary for proof of that charge had been proven, I believe that the prosecution did transfer the burden of proof as to heat of passion manslaughter to the defendant.

Thus, I write to express my belief that it is now time, in the interests of justice and fundamental fairness, to instruct the jurors in these cases, in some appropriate form, that once they have found that the defendant acted in accordance with the requisite *mens rea* of "knowingly," as to both second degree murder and heat of passion manslaughter, they must then examine the evidence to determine whether those actions mitigate the murder to manslaughter.

Our supreme court has recognized that, in promulgating § 18–3–104(1)(c), C.R.S. (1986 Repl.Vol. 8B), the General Assembly intended that "murder is mitigated to manslaughter," if a defendant's homicidal acts were a result of "sudden passion" caused by "a serious and highly provoking act of *the intended victim.*" *Coston v. People,* 633 P.2d 470, 473 (Colo.1981) (emphasis in original). *See* R. Perkins, *Criminal Law* 66 (2d ed. 1969). I believe that this interpretation of § 18–3–104(1)(c) expresses the legal basis as to why juries should be informed, as the General Assembly established, of the mitigating nature of heat of passion manslaughter.

I would respectfully assert that in every case in which there is sufficient evidence to

instruct on second degree murder and also to instruct as to heat of passion manslaughter, the jury should be presented with a special interrogatory on which it is directed to answer the question: Was the act, or series of acts, causing death *knowingly* committed? If the answer is "yes," it would then answer the question: Was the act, or series of acts, causing the death performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person who performed the killing sufficiently to excite an irresistible passion in a reasonable person?

If the answer to the second question is "yes" it would then answer the question: Between the provocation and the killing was there an interval sufficient for the voice of reason and humanity to be heard?

The jurors would then be instructed that if they answer the first two questions "yes" and the third question "no," they must find the defendant guilty of heat of passion manslaughter, unless they also find from the evidence that any defense to that charge is applicable.

An interrogatory, or instruction similarly structured, such as this, would simply and directly inform the jury that, under certain circumstances, murder may be mitigated to manslaughter. Additionally, the absence of reasons, or disincentives, to search the evidence for the mitigating nature of heat of passion manslaughter would be negated.

Here, given the unusual nature of the circumstances leading to the homicide, I believe that had the jury had the benefit of the statement of law such as in the proposed interrogatory and supporting instructions, it might have convicted the defendant of manslaughter and not of second degree murder.

Accordingly, I would reverse the judgment and remand for a new trial.