The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Thomas J. HENNION, Defendant–
Appellant.

No. 94CA1454.

Colorado Court of Appeals,
Div. I.

Dec. 21, 1995.

Rehearing Denied Feb. 1, 1996.

Certiorari Denied Sept. 3, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Catherine P. Adkisson, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Shelley Gilman, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Thomas J. Hennion, appeals from the judgment of the trial court entered upon jury verdicts finding him guilty of attempted second degree murder and crime of violence. We affirm.

According to the prosecution's evidence, defendant and his wife (victim) began to experience marital problems and, in October 1992, victim filed a petition for dissolution. Over the following months, the dissolution action became very emotionally charged, especially over financial issues and the issue of child custody. In March 1993, defendant made threats towards the victim, telling her that he would "get rid of her permanently." His statements were accompanied by a hand signal mimicking a gun.

On September 28, 1993, victim was in her driveway preparing to take their two-year-old daughter to a scheduled visitation with defendant. As victim walked toward the car, she saw defendant crouched by a fence holding a backpack.

Victim ran toward the house, carrying their daughter and screaming. Defendant then ordered the victim into the house, told

her he had a gun, and said, "I'll blow your head off. And if anyone else comes, I'll blow us all away." The defendant then pulled out the gun and made continuing threats with the gun pointed at the victim. During the extended incident, defendant placed the gun at the victim's neck two times and pulled the trigger, but the gun would not fire.

At trial, defendant presented a very different version of the events. Basically, he claimed he was very depressed about the child custody arrangement and formed a plan to kill himself. He conceded that he had encountered the victim at her house, but denied ever pointing the gun at the victim and maintained that he had only used it in attempts to kill himself.

## I.

Defendant first contends that the trial court erred in refusing to instruct the jury on the lesser offenses of attempted heat of passion manslaughter and attempted reckless manslaughter. We disagree.

A trial court is not required to give a lesser included or lesser non-included offense instruction unless there is some evidence tending to establish the lesser offense and there is a rational basis upon which the jury may acquit the defendant of the greater offense but convict him of the lesser. *Jones v. People*, 711 P.2d 1270 (Colo.1986).

### A.

#### Attempted Heat of Passion Manslaughter

Attempted heat of passion manslaughter is not a lesser included offense of attempted second degree murder because the establishment of the essential elements of the greater offense of attempted second degree murder do not necessarily establish all of the elements required to prove the lesser offense of attempted heat of passion manslaughter. *See People v. Rivera*, 186 Colo. 24, 525 P.2d 431 (1974); *People v. Skinner*, 825 P.2d 1045 (Colo.App.1991) (comparing lesser included with lesser non-included offenses). *See also People v. Rosales*, 911 P.2d 644 (Colo.App. 1995); *People v. Seigler*, 832 P.2d 980 (Colo. App.1991).

In order for a defendant to be entitled to a heat of passion manslaughter instruction, the evidence must establish: (1) [t]he act causing the death was performed upon a "sudden heat of passion," (2) caused by a "serious and highly provoking act of the intended victim," (3) which was sufficient "to excite an irresistible passion in a reasonable person," and (4) between the provocation and the killing, an insufficient "interval" of time passed for "the voice of reason and humanity to be heard." *People v. Garcia*, 826 P.2d 1259 (Colo.1992); § 18–3–104(1)(c), C.R.S. (1995 Cum.Supp.).

Here, victim testified that defendant deliberately and repeatedly tried to kill her by putting the gun to her neck and pulling the trigger. Defendant testified that he had no intent to kill victim and did not point the gun at her, only at his own head and at the ground. Rather, he claimed that he went to talk to her and, when she started to scream, he decided to kill himself. Nor was there was any evidence that defendant's actions were caused by a "serious and highly provoking act" of victim.

Under this state of the record, there was no evidence to show attempted heat of passion manslaughter. Thus, the trial court did not err in refusing to give defendant's tendered instruction.

### B.

#### Reckless Manslaughter

A person commits the crime of manslaughter by recklessly causing the death of another person. Section 18–3–104(1)(a), C.R.S. (1995 Cum.Supp.). Persons act "recklessly" when they consciously disregard a substantial and unjustifiable risk that a result will occur or that a circumstance exists. Section 18–1–501(8), C.R.S. (1986 Repl.Vol. 8B).

Attempted reckless manslaughter requires: (1) that the accused have the intent to commit the underlying offense of reckless manslaughter; (2) that he or she commence and sufficiently pursue the risk producing act or conduct so as to constitute a "substantial step toward the commission of the offense"; and (3) that he or she engage in the requisite

acts or conduct "with the kind of culpability otherwise required for the commission of the underlying offense," that is, with a conscious disregard of a substantial and unjustifiable risk that the acts or conduct will cause the death of another person. *See People v. Thomas,* 729 P.2d 972 (Colo.1986); § 18–2–101(1), C.R.S. (1986 Repl.Vol. 8B). Thus, attempted reckless manslaughter is a lesser-included offense of attempted second degree murder.

■ As previously stated, however, defendant denied ever pointing the gun in victim's direction, maintaining that he pointed it only at his own head or at the ground. He further testified that each time he put the gun to his head and pulled the trigger it failed to discharge. On the other hand, the prosecution's evidence demonstrated an intent to kill.

Under these circumstances, there was not evidence probative of all the elements of attempted reckless manslaughter. Thus, the trial court did not err in refusing the tendered instruction on that offense.

## II.

Defendant next contends the trial court's introductory remarks to the jury about the appellate process were so prejudicial as to require a reversal of his convictions. We disagree.

■ Initially, we note that defendant did not object to the comments made by the trial court and, thus, the appropriate standard of review is plain error. Plain error is that which so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Harris v. People,* 888 P.2d 259 (Colo.1995).

During its introductory remarks to the jury, the trial court gave a lengthy general overview of the trial process. As part of the trial court's explanation of that process, it stated:

In a jury trial, a judge and a jury are in [a] sense partners in deciding the case. A judge's role is technical. It's the duty of the judge to decide what law is applicable to this case and under that law to decide what evidence may properly be presented

to you. The jury is the finder of fact. Guided by the law as I explain it to you, you decide what has been proved or not proved in this case.

However, in that partnership, the role of the jury is far more important than that of a judge for this reason: *If I should make a technical error of law, the case could be appealed to the Court of Appeals or Colorado Supreme Court and if an error has been made, it would be reversed, sent back to me, and I would be told to do the case over again* and to do it properly. Your finding of fact, on the other hand, will not be reviewed by anyone. Whatever you determine to be the facts of the case will bind the case, and that makes you the most important persons in this courtroom. (emphasis added)

■ As a general rule, trial courts should avoid making unnecessary references to reviewing courts, and the probability of reversal upon appeal, while in the presence of the jury. This is because such remarks may tend to diminish the jury's sense of final responsibility or suggest that a conviction is a foregone conclusion in the eyes of the court. *See Price v. State,* 149 Ga.App. 397, 254 S.E.2d 512 (1979) (trial court erred by stating to the jury that if the court made an error, there were two appellate courts ahead of it in the state); *State v. Nicholson,* 689 S.W.2d 43 (Mo.1985) (trial court erred by referring to ease with which jury verdict could be overturned by appellate court). *Cf. Hernandez v. State,* 507 S.W.2d 209 (Tex. App.1974) (trial court's remark to defense counsel that, "You can try that on appeal," made in presence of jury implied that defendant's conviction was a foregone conclusion in the eyes of the court and constituted error).

Here, however, in its general comment about appellate procedure, the trial court merely sought to explain to the jury the fact that a jury trial has two components: it is both a trial on the facts and a trial on the law. This clarified the dual functions of judge and jury by contrasting the court's duty to rule on legal issues, such as the admissibility of evidence or the propriety of jury instructions, with the jury's duty to determine facts. Introductory comments by

the trial court such as these place in context the bench conferences, objections, recesses to chambers, or other delays that may accompany a trial.

■ We thus conclude that, while the trial court's brief remarks about the appellate courts and the possibility of reversal should have been avoided, when they are viewed in context with the rest of the court's explanation of the trial process, they did not undermine the fairness of the trial so as to cast serious doubt on the reliability of defendant's convictions. Nor did such remarks diminish the jury's sense of responsibility about the finality of the judgment.

We reject defendant's contention that *People v. Drake*, 748 P.2d 1237 (Colo.1988) requires a different result. In *Drake*, the supreme court reversed defendant's conviction, disapproving comments by the prosecutor which implied to the jury that it only had an advisory or indirect role, rather than the ultimate role, in imposing sentence. Here, however, the trial court's remarks emphasized to the jury its importance in the trial process, reinforced the fact that the ultimate decision in the case belonged to the jury, and noted that its factual determinations would not be reviewed.

For these reasons, we reject the defendant's contention that the comments to the jury constituted plain error.

### III.

Finally, defendant contends the trial court erred in not instructing the jury adequately on his theory of the case. We disagree.

■ A defendant has a right to present a defense and a right to have the jury accurately instructed on that defense. This requires that his or her theory be embodied in the instructions given by the court, but there is no requirement that the jury be instructed on the defendant's theory in the particular language tendered by defendant. *People v. Mershon*, 844 P.2d 1240 (Colo.App.1992), *aff'd in part and rev'd in part on other grounds*, 874 P.2d 1025 (Colo.1994).

■ An instruction embodying a defendant's theory of the case must be given by the trial court if the record contains any evidence to support the theory. In order to effectuate this rule, a trial court has an affirmative obligation to cooperate with counsel either to correct the tendered theory of the case instruction or to incorporate the substance of such in an instruction drafted by the court. *People v. Nunez*, 841 P.2d 261 (Colo.1992).

Here, defendant tendered the following instruction setting forth his theory of the case:

On September 28, 1993, [defendant] bought a gun to end his own life due to the despair brought on by his children being taken away. [Defendant] denies [victim's] accusations that he attempted to kill, kidnap, or assault her on that day.

The trial court rejected defendant's instruction, and instructed the jury as follows:

It is the position of the defendant ... that he did not have the intent described at Instruction #11 to commit the crimes of Attempted Murder in the First Degree and Second Degree Kidnapping as defined in Instruction #12 and #14, and that he possessed a gun only for the purpose of committing suicide.

Defendant contends that this instruction was improper because it limited its application to the charges of attempted first degree murder and second degree kidnapping. According to defendant, the trial court failed to instruct the jury that his theory of the case also applied to the lesser included offense of attempted second degree murder, the only charge with which he was ultimately convicted.

■ However, we conclude that the trial court's instruction adequately incorporated the substance of defendant's tendered instruction. It also instructed the jury of defendant's theory which was that he possessed the gun for the sole purpose of committing suicide. Contrary to defendant's contention, this theory necessarily applied to the lesser included offense of attempted second degree murder.

Accordingly, we find no error in the trial court's instruction to the jury.

The judgment is affirmed.

METZGER and CRISWELL, JJ., concur.