**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jimmy J. VASQUEZ, Defendant–Appellant.**

**No. 04CA0730.**

Colorado Court of Appeals,
Div. VI.

Dec. 28, 2006.

Certiorari Denied April 9, 2007.

John W. Suthers, Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Defendant, Jimmy J. Vasquez, appeals the judgment of conviction entered upon a jury verdict finding him guilty of class 4 felony theft and class 5 felony forgery. We affirm.

## I. Background

On August 6, 2002, the victim placed a check in her residential mailbox for mail pickup. The check was made payable to Nissan Motor Acceptance Corporation in the amount of $499.97. A few days later, the victim became suspicious about discrepancies in her mail service and contacted her credit union. An employee of the credit union informed her that the check had cleared in the amount of $2,500. After inspecting the check at the credit union, the victim signed an affidavit of forgery. The check the credit union had honored was faded and had been made out to "Jimmy Jospheph [sic] Vasquez".

A teller at the credit union testified that a man presented the check for payment on August 7, 2002. She wrote down his driver's license number (92–2397956) and placed his fingerprint on the back of the check. Upon viewing a photographic lineup, she identified a man other than defendant as the man who had presented the check. A latent print examiner testified that the fingerprint was not of suitable quality for identification. However, police officers investigating the forged check confirmed that defendant's driver's license number was 92–2397956.

## II. Motion to Suppress

Defendant first contends that the trial court erred when it denied his motion to suppress the statements he made on September 5, 2002, because they were obtained in violation of his Fifth Amendment right to counsel. We disagree.

## A. Facts

On September 4, 2002, defendant was arraigned on charges in an unrelated matter. On September 5, he was still being held in that matter when the police officers investigating the forged check spoke with him. Defendant waived his *Miranda* rights and confessed that he had passed the forged check and had been involved in a check-cashing scheme.

In the suppression hearing, defendant's counsel (1) asked the trial court to take judicial notice that, at the arraignment in the other case, defendant's counsel filed a motion in which he asserted defendant's "right to counsel, right to silence under both the Fifth Amendment and the Sixth Amendment" and (2) argued that there was "a very clear notification that [defendant] asserts his right to counsel and to have counsel present during any interrogation by police or prosecutors about his case or any other case." The prosecution did not object to defense counsel's proffer or request for judicial notice, and the court acknowledged that the referenced motion contained the words "any other case." However, the referenced motion is not part of the appellate record here, and the court did not describe what, if anything, it would judicially notice.

## B. Law

■ When reviewing a suppression ruling, we give deference to a trial court's findings of fact, but we treat the application of legal standards to those facts as a question of law to be reviewed de novo. *People v. Rivas,* 13 P.3d 315, 320 (Colo.2000).

■ When police interrogate a suspect who is in custody, they must advise the suspect that he has the right to remain silent, that anything he says may be used against him, that he has the right to the presence of an attorney, and that if he cannot afford one, one will be appointed for him. *Miranda v. Arizona,* 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966). The purpose of this advisement is "to dispel the compulsion inherent in custodial surroundings." *Miranda, supra,* 384 U.S. at 458, 86 S.Ct. at 1619. Accordingly, *Miranda* is not

implicated, and a suspect may not invoke his *Miranda* rights, unless he is both in custody and subject to official interrogation or interrogation is imminent. *United States v. Bautista,* 145 F.3d 1140 (10th Cir.1998); *United States v. Grimes,* 142 F.3d 1342, 1348 (11th Cir.1998); *United States v. LaGrone,* 43 F.3d 332, 339 (7th Cir.1994).

■ The Fifth Amendment privilege against self-incrimination and right to counsel are personal rights, and "nothing in *Miranda* or its progeny has indicated that the [Fifth Amendment] right to counsel may be invoked by anyone other than the suspect." *People v. Rosales,* 911 P.2d 644, 651 (Colo. App.1995); *see also Moran v. Burbine* 475 U.S. 412, 433 n. 4, 106 S.Ct. 1135, 1147, 89 L.Ed.2d 410 (1986) (during interrogation, police rebuffed attorney who had been hired by a Mirandized suspect's sister, where suspect had not requested assistance of counsel); *United States v. Nobles,* 422 U.S. 225, 233, 95 S.Ct. 2160, 2167, 45 L.Ed.2d 141 (1975)("The Fifth Amendment privilege against compulsory self-incrimination is an 'intimate and personal one'. . . .").

■ When a person who is in custody and subjected to interrogation personally and unambiguously informs the interrogator that he wants to be assisted by an attorney "in dealing with custodial interrogation by the police," the interrogation must stop, and it may not resume until counsel is made available to him or he initiates further communications. *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991) (discussing *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981)); *see United States v. Kelsey,* 951 F.2d 1196, 1199 (10th Cir.1991); *People v. Adkins,* 113 P.3d 788, 792 (Colo. 2005). Later interrogators are charged with the knowledge of a suspect's invocation of his right to counsel because of the presumption that the suspect considers himself unable to deal with the pressures of custodial interrogation without legal assistance. *See Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (discussing *Edwards v. Arizona, supra).* Accordingly, a proper invocation of the right to counsel may not be disregarded "simply because the police have

approached the suspect, still in custody, still without counsel, about a separate investigation." *Roberson, supra,* 486 U.S. at 683, 108 S.Ct. at 2099. However, interrogators are not charged with knowledge of a suspect's attempt to invoke his Fifth Amendment right to counsel in prior communications with government officials not charged with the investigation of criminal activity. *See Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *United States v. LaGrone, supra; Alston v. Redman,* 34 F.3d 1237 (3d Cir.1994).

■■ The failure of the police to recognize a defendant's Fifth Amendment right to counsel "will result in suppression of any evidence obtained as a result of the improper interrogation." *Perry v. Bd. of County Comm'rs,* 949 P.2d 99, 102 (Colo.App.1997). If a statement obtained in violation of *Miranda* was admitted as part of the prosecution's case-in-chief, over the defendant's objection, reversal is required unless the error was harmless beyond a reasonable doubt. *See People v. Trujillo,* 49 P.3d 316, 326 (Colo. 2002).

### C. Application

Here, defendant does not allege that he personally asserted his right to counsel at any time before police approached him regarding the forgery and advised him of his rights on September 5, 2002.

Nor does defendant dispute the evidence that he did not request counsel to assist him regarding that interrogation. Therefore, we conclude that the trial court properly determined that he was not denied his Fifth Amendment right to counsel.

■ We reject defendant's contention that his Fifth Amendment right to counsel was invoked when, in a motion before the trial court on September 4, 2002, his attorney purportedly stated that defendant was invoking his "right to counsel, right to silence under both the Fifth Amendment and the Sixth Amendment" with regard to the case in which defendant was being arraigned "and in any other case." We reject this contention for several reasons.

First, the Supreme Court has never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than custodial interrogation. *McNeil v. Wisconsin, supra,* 501 U.S. at 182 n. 3, 111 S.Ct. at 2211. Here, defendant does not allege, nor does the evidence show, that he was questioned on September 4, 2002, the date on which his attorney filed the motion with the court. And, on this record, we conclude that there was sufficient evidence upon which the court could find that defendant was not under imminent threat of interrogation for the forgery when his attorney attempted to invoke his *Miranda* rights as to that matter. *See Rhode Island v. Innis, supra,* 446 U.S. at 300, 100 S.Ct. at 1689 (" 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."); *see also Alston, supra,* 34 F.3d at 1245 (holding defendant was not under imminent threat of interrogation while sitting in jail cell speaking with public defender).

Second, we reject defendant's argument that this case is distinguishable from the *McNeil* line of cases because his attorney stated that he was asserting his Fifth Amendment right to counsel in "any other case." The facts of this case are similar to those in *Grimes,* in which the Eleventh Circuit held that a defendant was unable to anticipatorily invoke his *Miranda* rights by means of a claim of rights form filed in an unrelated case, which purported to assert his right not to make "any statements ... regarding the facts or circumstances of *any* criminal offenses." *Grimes, supra,* 142 F.3d at 1348 n. 9 (emphasis added); *see also People v. Villalobos,* 193 Ill.2d 229, 250 Ill.Dec. 17, 737 N.E.2d 639 (2000)(holding defendant unable to anticipatorily invoke his *Miranda* right to counsel by signing form stating he did not want to be questioned, outside the presence of his attorney, on "any offense").

Third, the Fifth Amendment right to counsel is a personal right that may be invoked only by the suspect. *Rosales, supra,* 911 P.2d at 651. Defendant has provided no authority to support the contention that it may be invoked vicariously by a suspect's counsel. Moreover, the record indicates that

the attorney was representing defendant in his arraignment on another matter pursuant to defendant's Sixth Amendment right to counsel, and the record provides no basis to conclude that defendant had retained the attorney to represent him regarding the forgery investigation.

Fourth, counsel's attempt to invoke defendant's Fifth Amendment right to counsel was not made to investigatory law enforcement authorities, but to the court. Even assuming counsel's attempt were otherwise proper, the investigatory authorities could not be charged with knowledge that defendant had invoked his right to counsel.

And fifth, the invocation of the Sixth Amendment right to counsel does not invoke the Fifth Amendment right to counsel. *McNeil v. Wisconsin, supra; Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

### D. Conclusion

Therefore, we conclude that the trial court correctly ruled that the police did not violate defendant's Fifth Amendment right to counsel when they approached him regarding the forged check, obtained a valid waiver of his *Miranda* rights, and obtained his confession. Accordingly, we also conclude that the trial court did not err when it denied his motion to suppress these statements.

### III. Admission of E–Mail Printout

Defendant also contends that the trial court erred when it admitted exhibit 5, a printout of an e-mail transmission containing his picture and text indicating an associated driver's license number, which investigators received from the Colorado Division of Motor Vehicles (DMV). We disagree.

### A. Testimony

Officer Grove testified that the police department records section checked with the division of motor vehicles regarding the driver's license number written on the back of the allegedly forged check and that the license number belonged to defendant. He then identified exhibit 5 as a portion of an e-mail transmission the police department re-

ceived from the DMV, and he stated that the exhibit contained a photograph and a license number. When the prosecutor asked whether there was a name associated with the photo and license number, defense counsel objected to Officer Grove's "being asked to look down a document without any further foundation[, how] he knows about it, just confirming what [the prosecutor] is reading from his copy of the document." Defense counsel stated, "Basically, it's hearsay." The court overruled the objection and allowed the witness to state whether there was a name on the exhibit. Officer Grove testified that there was no name on it.

The prosecutor then asked Officer Grove whether he saw the man whose photo was on the exhibit. Defense counsel objected on grounds that such testimony would be an inadmissible opinion and that it might be an ultimate conclusion for the jury to decide. Again, the court overruled the objection. After Officer Grove identified defendant as the man whose photo was on the exhibit, the prosecutor offered exhibit 5 into evidence.

Defense counsel conducted a voir dire during which Officer Grove testified that he had not found or received the e-mail message as part of his investigation, but that it had been transmitted to another officer. Defense counsel objected to the exhibit's admission, arguing that it lacked sufficient relevance and foundation. However, the trial court overruled this objection, stating, "I'm going to allow it as a public record."

The prosecution also offered, and the court admitted, videotape surveillance of the man who presented the check for payment at the credit union. The prosecution also presented testimony that defendant admitted to police that he had cashed the check and was involved in a check-cashing scheme. The detective to whom the e-mail message was transmitted later testified that he received it in response to his request that the DMV retrieve its copy of the driver's license photo associated with the license number that was on the back of the check.

Defendant now argues that by admitting exhibit 5, the court denied him "his right to confrontation, [admitted] a hearsay document that did not qualify for admission under the

public records exception to the hearsay rule, and for which the foundational requirements for admission were not met."

## B.  Law

■■■■■  "In general, we will not disturb an evidentiary ruling on appeal absent an abuse of discretion." *People v. Carlson,* 72 P.3d 411, 420 (Colo.App.2003).  In addition, when a party does not object at trial, our review is limited to determining whether admission of the evidence constitutes plain error within the meaning of Crim. P. 52(b). Plain error is obvious and substantial error that so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005); *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003).

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  CRE 901(a).  Physical evidence may be authenticated and identified by testimony that a matter is what it is claimed to be.  CRE 901(b)(1).  Evidence that a public record, report, or statement, in any form, is from the public office where such items are kept is sufficient authentication and identification under CRE 901.  CRE 901(b)(7).  Extrinsic evidence of authenticity is not required with respect to certified copies of public records. CRE 902(4).

When a document is authorized to be recorded or filed and is actually recorded or filed, its contents may be proved by certified copy under CRE 902, by testimony that it is a true copy of the original, or, when a copy complying with the foregoing cannot be obtained by the exercise of reasonable diligence, by other evidence of the contents. CRE 1005.

■■■  Records pertaining to driver's licenses maintained by a division of motor vehicles fall within the public records exception to the hearsay rule.  CRE 803(8); *see Lorenz v. Martin Marietta Corp.,* 802 P.2d 1146, 1151 (Colo.App.1990), *aff'd,* 823 P.2d 100 (Colo.

1992); *Coates v. State,* 650 N.E.2d 58, 63 (Ind.Ct.App.1995)(holding motor vehicle documents fell within exception because they were a compilation of the bureau's "regularly conducted and regularly recorded activities").

## C.  Admissibility

Because he objected to exhibit 5 based on the lack of a foundation, we review that contention for abuse of discretion.  Although defendant objected to Officer Grove's *testimony* regarding the contents of exhibit 5 as hearsay, defendant did not object to *exhibit 5* on grounds of hearsay or violation of his right to confrontation.  Therefore, we review his hearsay and Confrontation Clause contentions under the plain error standard.

We conclude that the trial court did not abuse its discretion when it ruled that Officer Grove's testimony provided a sufficient foundation to authenticate and identify exhibit 5 as a DMV transmission of a public record to the police department.  Given the videotape, defendant's admissions to police, and the testimony from Officer Grove and the detective who received exhibit 5, we conclude that the admission of exhibit 5 did not constitute obvious and substantial error so undermining the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.  *See People v. Miller, supra,* 113 P.3d at 750;  *People v. Sepulveda, supra,* 65 P.3d at 1006.

We also reject defendant's contention that exhibit 5 was admitted in violation of CRE 1005.  Although defendant stated a general objection regarding lack of foundation, he did not object based on the lack of certification. Therefore, we review for plain error.

■■■  Defendant misapprehends the requirements of CRE 1005, which permits a copy of a record to be authenticated by testimony.  Thus, when, as here, the proponent authenticates and identifies a public record through testimony, it need not also present a certified copy.  Certification in accordance with CRE 902 simply makes the document self-authenticating and eliminates the need for such testimony.

Therefore, we conclude that the trial court did not err when it admitted exhibit 5 based

on Officer Grove's testimony and without certification.

### D. Confrontation Clause

Defendant's final contention regarding exhibit 5 is that its admission violated his right to confrontation. We disagree.

Contrary to defendant's assertion, *People v. Harris,* 43 P.3d 221, 230 (Colo.2002), is not controlling here because *Harris* predates *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Under *Crawford,* even a hearsay objection does not preserve a confrontation issue. *See People v. Vigil,* 127 P.3d 916, 930 (Colo.2006). Here, defendant objected to the admission of exhibit 5 based only on lack of foundation, and not based on hearsay or violation of his confrontation rights. Therefore, we review for plain error, and we find none. *See Vigil, supra,* 127 P.3d at 930.

### IV. Improper Lay Opinion

The People concede that Officer Grove's testimony that the man in the photograph in exhibit 5 was defendant should not have been admitted because the record does not reflect any basis for Officer Grove's familiarity with defendant. Nevertheless, we reject defendant's contention that this error required reversal. Defendant had an opportunity to cross-examine Officer Grove regarding this testimony, and the jury saw the photo on exhibit 5 and was able to reach its own conclusion as to whether the picture was of defendant. In addition, the jury also had the videotape of defendant presenting the check at the credit union and evidence of defendant's admissions to police. Consequently, we conclude that the admission of Officer Grove's opinion testimony was harmless.

The judgment is affirmed.

Judge WEBB and Judge J. JONES concur.